UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RYAN PALMER, #237870,

    Plaintiff,

v.

BEVERLY SAINZ, P.A. and
MICHAEL KUHN,

    Defendants.
_____/

Case No. 09-12316

Honorable Arthur J. Tarnow
Magistrate Judge David R. Grand

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT BEVERLY J. SAINZ'S MOTION TO DISMISS (Doc. #20) AND TO GRANT DEFENDANT MICHAEL KUHN'S MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT (Doc. #27)**

Defendant Beverly Sainz's Motion to Dismiss (Doc. #20) and Defendant Michael Kuhn's Motion to Dismiss and/or for Summary Judgment (Doc. #27) were referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B). Doc. #33. For the reasons discussed below, the court recommends that the District Court grant both motions.

### I. BACKGROUND FACTS

    A.    **Palmer's Injury and Medical Treatment**

In this *pro se* prisoner civil rights case, Plaintiff Ryan Palmer challenges medical care he received while incarcerated at the Robert G. Cotton Facility in Jackson, Michigan. On May 11, 2008, Palmer was taken to the emergency room at Duane Waters Hospital to receive medical care for a "deep cut to [his] left thumb." Compl., ¶9.[1] Palmer was seen at the hospital

---

[1] Palmer does not allege when or how he sustained the cut, or how he came to be sent to the hospital.

emergency room that same day by Defendant Dr. Kuhn. *Id.* Palmer alleges that Kuhn did not take x-rays of the laceration and that the he "simply stitched" the wound. *Id.* Palmer was then returned to the Cotton Facility. *Id.* On May 12, 2008, Palmer claims that a Cotton Facility nurse told him that "the doctor" would see him the next day, *i.e.*, May 13, 2008. *Id.* However, Palmer was not seen by a doctor on the 13th. *Id.* Two weeks later Palmer asked his unit officer to contact health-care about seeing "the doctor." *Id.*

Palmer's complaint then skips a month in time to June 12, 2008, when he alleges that he was seen, for the first time, by Defendant Sainz, a physician assistant. Compl., ¶¶8, 9. Sainz allegedly told Palmer that he had "cut tendons in his thumb and that there was nothing that could be done about it because the injury was suppose [sic] to have been checked within the first forty-eight (48) hours of its occurrence." Compl., ¶9.

On June 15, 2008, Palmer filed a grievance related to his medical care. *Id.* Palmer sought compensation from "Duane L. Waters Health Care Center and the health care staff at G. Robert Cotton Correctional Facility…" *Id.* On July 18, 2008, Palmer was seen by "an orthopedic for his inability to extend his thumb and [was] told that his condition was untreatable." *Id.*

### B. Palmer's §1983 Complaint

After allegedly exhausting his administrative remedies related to his grievance, *id.*, Palmer filed this action under 42 U.S.C. §1983 against Defendants Kuhn and Sainz claiming a violation of his Eighth Amendment right to be free from cruel and unusual punishment. Palmer summarizes his claims against each Defendant as follows:

> Basically, plaintiff's claim is that Dr. Kuhn's treatment [] was grossly inadequate because, rather than take x-rays of the cut first to properly assess the extent of the damage, he (Dr. Kuhn) simply stitched it up and sent plaintiff on his way. It's plaintiff's position, that, if he (Dr.

> Kuhn) had taken x-rays of the injury, he would have seen that the tendons in the thumb were damaged and, thus, he would have taken the necessary steps to repair such.
>
> Moreover, Dr. Sainz, subsequent, delay in follow up treatment not only caused plaintiff to needlessly suffer the pain of his injury, but it also resulted in a life-long hardship for plaintiff, as he is now unable to fully extend his left-thumb or hold heavy objects in his left hand. Through Dr. Sainz [sic] own admissions, if plaintiff had received follow up treatment within forty-eight (48) hours of the injury, the tendon damage could have been repaired.

Compl., ¶10.

Palmer claims that the challenged conduct of Defendants Kuhn and Sainz constitutes "deliberate indifference to a serious medical need," "willful and wonton infliction of pain and suffering," and "resulted in a permanent handicap." Compl., p. 4. Palmer seeks both compensatory and punitive damages, as well as an order for the defendants to pay to have his left thumb surgically repaired by a doctor of his choosing. *Id.*, p. 5.

### C. Defendants' Dispositive Motions

On June 9, 2011, Defendant Sainz filed a motion to dismiss. Sainz points out that Palmer's only alleged deprivation is that he did not receive proper medical care for his damaged tendon within 48 hours of suffering the laceration on May 11, 2008[2]. Since Palmer only alleges conduct by Sainz a month later on June 12, 2008, Sainz argues that he failed to state a "deliberate indifference" claim against her. On August 22, 2011, Palmer was given an extension of time to respond to Sainz' motion. Doc. #26. On August 23, 2011, Defendant Kuhn filed a "Motion to Dismiss and/or Motion for Summary Judgment." Kuhn's motion seeks dismissal on two grounds: (1) Palmer failed to allege sufficient facts to state a claim for deliberate indifference,

---

[2] Again, Palmer did not specify when he suffered the laceration, but since he did not allege a delay in being seen initially, the court will assume he suffered the cut the same day he went to the Emergency Room.

3

and (2) Palmer failed to comply with procedural requirements for pursuing a state law medical malpractice claim.[3] The only document Palmer filed in response to either motion was his letter dated September 20, 2011 (Doc. #29), the entire contents of which are as follows:

> I really don't know what to do at this point. I don't have anyone to help me.[4] I object to the motion to dismiss this case. I did not cut myself with a razor. I cut myself at work with a butcher knife in the kitchen. I am requesting a jury trial. Please forgive me for not knowing what to do and grant me a jury trial.

For the reasons discussed below, the court recommends that both Defendants' Motions to Dismiss be granted.

## II. APPLICABLE LEGAL STANDARDS

### A. General Standards Governing Motions to Dismiss

A motion to dismiss pursuant to Fed. R. of Civ. P. 12(b)(6) tests a complaint's legal sufficiency. Under FRCP 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "To survive a motion to dismiss, a

---

[3] Kuhn makes this second argument in the event the court were to construe Palmer's complaint as alleging "a state medical malpractice action." Doc. #27, Kuhn Motion, ¶8. The court need not reach the argument's merits. In light of the court's recommendation to grant Defendants' respective motions to dismiss, to the extent Palmer's complaint raises state law medical malpractice claims, the court recommends that the District Court decline to exercise supplemental jurisdiction over them, and dismiss them without prejudice to Palmer's right to pursue them in state court. 28 U.S.C. §1367(c)(3); *see Brown v. Cassens Transport Co.*, 546 F.3d 347, 363 (6th Cir. 2008) (noting that federal court should typically decline to exercise pendent jurisdiction over a plaintiff's state-law claims after dismissing the federal claims); *Nali v. Angelo*, 2011 WL 824596, at *3 (E.D. Mich. Mar. 3, 2011).

[4] The court notes that the District Court denied Palmer's initial motion for the appointment of counsel because it found "no exceptional circumstances" meriting such an appointment at that time. Doc. #12. Even if Palmer's instant reference to lacking "help" were a renewed motion for appointment of counsel, in light of the merits of Defendants' respective positions, the court would deny that motion. *See Cottenham v. Saginaw Co.*, 2001 WL 558235, at *2 (E.D. Mich. Mar. 9, 2001) ("Upon a court's review of a defense motion for summary judgment, if there is a finding that said motion should be granted, then that is a sufficient basis to justify the denial of a plaintiff's request for counsel.").

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (*citing Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, pleadings filed by a *pro se* litigant are entitled to a more liberal reading that would be afforded to formal pleadings drafted by lawyers. *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Despite the leniency afforded *pro se* litigants, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," to prevent such a complaint from being dismissed on grounds that it fails to sufficiently comport to basic pleading requirements. *Howard v. City of Girard, Ohio*, 346 Fed. Appx. 49, 51 (6th Cir. 2009) (citing *Twombly*, 550 U.S. at 555). Furthermore, a court is not required to "create a claim which [a plaintiff] has not spelled out in his pleading." *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). Ultimately, "[d]etermining whether a complaint states a

5

plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1949.

### B. Standards Applicable to "Deliberate Indifference" Claims

"The Cruel and Unusual Punishment Clause of the Eighth Amendment guarantees federal inmates the right to adequate medical care, and the Fourteenth Amendment extends this right to inmates incarcerated by the states." *French v. Daviess Co., Ky.*, 376 Fed. Appx. 519, 521 (6th Cir. 2010) (citing *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir.2005)); *see also Estelle v. Gamble*, 429 U.S. 97, 101-02, 104-05 (1976). For the failure to provide medical treatment to constitute a constitutional violation, the prisoner must allege and show that the defendants acted with "deliberate indifference" to those needs. *Estelle*, 429 U.S. at 104; *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).

There are two elements of such claims that a prisoner must satisfy – an objective one and a subjective one. *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). The objective component requires a plaintiff to show the existence of a "sufficiently serious" medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The subjective component, in contrast, requires a plaintiff to "allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 703 (citing *Farmer*, 511 U.S. at 837). In other words, the prisoner must allege facts which show that "an official who actually knew of the serious medical need possessed 'a sufficiently culpable state of mind in denying medical care.'" *Perez v. Oakland Co.*, 466 F.3d 416, 424 (6th Cir., 2006) (quoting *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005) and *Farmer*, 511 U.S. at 834). Allegations which amount to claims of negligence by the defendant do not satisfy this subjective

6

component. *Id.* at 423; *Estelle*, 429 U.S. at 106 ("[T]hat a [medical professional] has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment.").

### III. ANALYSIS

Even assuming (which the court will do for purposes of these motions) that Palmer adequately alleged a serious medical need, his complaint is devoid of allegations to satisfy the subjective component of his deliberate indifference claims against either Defendant Sainz or Kuhn. Thus, their respective motions to dismiss should be granted.

#### A. Defendant Sainz' Motion to Dismiss Should be Granted

Palmer's claim against Sainz is that she acted with deliberate indifference to his serious medical needs by not performing "follow up treatment [after Palmer's initial visit with Dr. Kuhn on May 11, 2008]…within forty-eight (48) hours of the injury…" Compl., p. 4. To prevail on that claim, Palmer was required to allege that Sainz "actually knew" of his need for that follow-up treatment, and that she denied him that treatment with a "sufficiently culpable state of mind…" *Perez*, 466 F.3d at 416. But Palmer's complaint makes neither of those allegations.

Palmer does not allege that Sainz was aware of him on May 11, 2008, when he was first treated for his injury at the Duane Waters Hospital Emergency Room. Compl., ¶9. He does not allege that Sainz was aware of him on May 12, 2008, when Nurse Wilson of the Cotton Facility told him that "the doctor"[5] would see him the next day, *i.e.*, May 13, 2008. *Id.* And, he does not

---

[5] Palmer made no allegations from which one could infer that "the doctor" referenced by Nurse Wilson was Defendant Sainz. To the contrary, although Palmer refers to Sainz as "Dr. Sainz" in his complaint, he clearly understood that she was not a doctor. *See* Compl., ¶8 ("Defendant, Beverly J. Sainz (hereafter "Dr. Sainz"), is employed as a physician-assistant at the G. Robert Cotton Correctional Facility…"). Even if Palmer did not understand that distinction, his

7

allege that Sainz was aware of him in the days and weeks that followed while he allegedly was waiting to see a doctor. *Id.* In fact, Palmer's complaint contains no allegations from which one could conclude that Sainz was aware of him at any time prior to her first treatment of him on June 12, 2008. Thus, Palmer failed to allege that Sainz "actually knew" of Palmer at all, let alone that he had a serious medical need, prior to June 12, 2008. *Perez*, 466 F.3d at 424; *Miller*, 408 F.3d at 813; *Farmer*, 511 U.S. at 834. Obviously, Sainz could not have "delay[ed] in follow up treatment" when she was unaware of Palmer or his injury in the first place. Compl., p. 4.

Palmer's complaint against Sainz also failed to satisfy the subjective component of a deliberate indifference claim because he made no allegations from which one could infer that Sainz acted with a "culpable state of mind." *Perez*, 466 F.3d at 416. The first mention of Sainz in Palmer's complaint is that she saw him on June 12, 2008 at which point she allegedly told him that he had cut tendons in his thumb and that "there was nothing that could be done about it because the injury was suppose [sic] to have been checked within the first forty-eight (48) hours of its occurrence." Compl., ¶9. Even construing this allegation in the light most favorable to Palmer, Sainz was simply advising him that, based on what she observed at that time, there was nothing she could do for him. Her statement does not constitute an "admission," Compl., p. 4, or permit the inference, that she delayed in providing medical care, let alone that she did so with a culpable state of mind.

Accordingly, as a matter of law, Palmer has not alleged "deliberate indifference" by Sainz, and her motion to dismiss should be granted.

---

complaint does not contain any allegations from which one could infer that "the doctor" referenced by Nurse Wilson was aware of Palmer or his condition.

8

### B. Defendant Kuhn's Motion to Dismiss Should be Granted

Palmer's allegations against Kuhn also fail to state a claim for deliberate indifference. Courts distinguish between "cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (2011) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976)). *See also Estelle*, 429 U.S. at 106 ("an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wonton infliction of pain…'"); *Cox v. CMS*, 2007 WL 2873208, *4 (E.D. Mich. Feb. 20, 2007). While the former claims may evidence the type of culpability needed to state a deliberate indifference claim, the latter amount to assertions of medical negligence and do not satisfy the requisite subjective component of such claims. *Perez*, 466 F.3d at 423; *Alspaugh*, 643 F.3d at 169; *Estelle*, 429 U.S. at 106 ("a complaint that a [medical professional] has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment.").

Thus, to state a viable deliberate indifference claim, Palmer was required to allege facts showing that Kuhn "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 703 (6th Cir. 2001); *Estelle*, 429 U.S. at 106 ("[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."). Palmer's complaint contains no such allegations.

Palmer does not allege that Kuhn was aware that more than stitches were required to adequately treat his wound. He does not allege that Kuhn consciously disregarded his medical needs related to that injury or that Palmer acted with ill will toward him. Nor does Palmer allege

9

that Kuhn refused to see him, or refused to provide him with medical care.[6] In fact, Palmer alleges the opposite – that Kuhn provided him with medical care – suturing his wound – the day he was brought to the Emergency Room. Compl., ¶9.

Palmer's claim is thus not that Kuhn denied him any medical care, but instead that Kuhn provided him with negligent medical care. Specifically, Palmer claims that instead of suturing his wound, Kuhn should have taken an x-ray of his thumb which Palmer claims would have revealed the tendon damage[7] and led to course of treatment to fix it. Compl., ¶10. But that is precisely the type of medical judgment that the U.S. Supreme Court has held does not state a "deliberate indifference" claim, even if that judgment is the product of negligence. *Estelle*, 429 U.S. at 107-08.

In *Estelle*, the plaintiff prisoner suffered various injuries while on work duty, including what was diagnosed by prison doctors as a "lower back strain." *Id.* at 107. Though he received treatment for all of his ailments and injuries, his back did not improve. The prisoner filed a §1983 action against the prison officials "based solely on the lack of diagnosis and inadequate treatment of his back injury." *Id.* He claimed that "more should have been done by way of

---

[6] Palmer's allegation that on May 12, 2008, Nurse Wilson of the Cotton Facility told him that "the doctor" would see him the next day is of no consequence on this point. Palmer conspicuously does not allege that "the doctor" mentioned by Nurse Wilson referred to Dr. Kuhn. This makes sense as Dr. Kuhn was an outside hospital Emergency Room doctor not affiliated with the Cotton Facility. Complt., ¶7. Nor does he allege that Dr. Kuhn himself ever indicated the need for (or was aware of) an appointment to see Palmer on May 13th that he ignored. Finally, when Nurse Wilson made the alleged comment to Palmer, Kuhn had already determined not to x-ray his thumb and had decided it merely required stitches. Palmer did not allege, and one cannot infer, that Kuhn would have acted differently on the 13th. *Iqbal*, 129 S.Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

[7] While Palmer's assertion about an x-ray's capabilities to reveal such damage appears dubious, given the court's obligation to liberally construe *pro se* plaintiff complaints, *Thomas*, 481 F.3d at 437, it will assume Palmer to be suggesting that there was some diagnostic procedure other than Kuhn's mere observation that he should have performed.

diagnosis and treatment, and suggest[ed] a number of options that were not pursued." *Id.* The Court of Appeals agreed, stating that an x-ray "might have been in order and other tests conducted that would have led to appropriate diagnosis and treatment … ." *Id.* (quoting *Estelle v. Gamble*, 516 F.2d 937, 941 (5th Cir. 1975)). However, the U.S. Supreme Court reversed, holding that "the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice…" which does not state a valid deliberate indifference claim under the Eighth Amendment. *Id.* at 106-07; *see also Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995) ("difference[] in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment [is] insufficient to state a deliberate indifference claim."); *Farmer*, 511 U.S. at 838 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."). This is because the "inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain'… ." *Estelle*, 429 U.S. at 106.

Thus, even if Palmer's complaint is construed as alleging that a reasonable doctor in Kuhn's position would have performed a diagnostic test to determine whether Palmer's tendon had been injured, Palmer's allegations still amount to nothing more than a claim that the medical care he did receive was inadequate. *Id.* Without more, such claims fail as a matter of law to satisfy the subjective component necessary to state a §1983 claim for deliberate indifference.

*Id.*; *Farmer*, 511 U.S. at 838; *Sanderfer*, 62 F.3d at 154-55; *Alspaugh*, 643 F.3d at 169. Accordingly, the court should grant Kuhn's motion to dismiss.[8]

## IV. CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that the District Court GRANT Defendant Beverly J. Sainz's Motion to Dismiss (Doc. #20) and GRANT Defendant Michael Kuhn's Motion to Dismiss and/or Motion for Summary Judgment (Doc. #27).

To the extent Palmer raises state law medical malpractice claims, IT IS RECOMMENDED that the District Court decline to exercise supplemental jurisdiction over them, and dismiss them without prejudice to Palmer's right to pursue them in state court.


Dated: January 12, 2012                     s/ David R. Grand
                                            DAVID R. GRAND
                                            UNITED STATES MAGISTRATE JUDGE


### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,

---

[8] Because the court recommends that Kuhn's Motion to Dismiss be granted, it declines to address his alternative motion for summary judgment.

12

1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 12, 2012.

s/Felicia M. Moses
FELICIA M. MOSES
Case Manager